http://www.va.gov/vetapp16/Files4/1634347.txt

Citation Nr: 1634347 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 10-40 408 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida

THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for ulcerative colitis for the period prior to September 26, 2015. 

2. Entitlement to an initial rating in excess of 60 percent for ulcerative colitis for the period since September 26, 2015.

REPRESENTATION

Veteran represented by: Disabled American Veterans

ATTORNEY FOR THE BOARD

James A. DeFrank, Counsel

INTRODUCTION

The Veteran had active service from March 2005 to September 2008.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania which, in part, granted service connection for ulcerative colitis at an initial 10 percent disability evaluation, effective September 9, 2008. The case was later transferred to St. Petersburg, Florida.

In April 2015, the Board remanded the issue of entitlement to an initial rating in excess of 10 percent for ulcerative colitis for additional development.

In an October 2015 rating decision, the RO granted an increased initial rating of 60 percent for ulcerative colitis, effective September 26, 2015.

The increase from 10 percent to 60 percent for ulcerative colitis did not constitute a full grant of the benefits sought. Accordingly, the issue of entitlement to an initial rating in excess of 60 percent for the period since September 26, 2015 for ulcerative colitis, remains in appellate status. AB v. Brown, 6 Vet. App. 35, 39 (1993).

The Veteran submitted a waiver of his right to have the RO review newly submitted evidence and allowing the Board to proceed with an appeal.

FINDINGS OF FACT

1. For the period from September 9, 2008 to September 26, 2015, the Veteran's ulcerative colitis was manifested by moderately severe symptoms with frequent exacerbations.

2. For the period since September 26, 2015, the Veteran's ulcerative colitis has not been manifested by pronounced symptoms of marked malnutrition and anemia, or serious complications, such as liver abscess.

CONCLUSIONS OF LAW

1. The criteria for an initial disability evaluation of 30 percent, but not greater, for the Veteran's service-connected ulcerative colitis are met from September 9, 2008. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.114, Diagnostic Codes 7323 (2015).

2. For the period since September 26, 2015, the criteria for an initial evaluation in excess of 60 percent for service-connected ulcerative colitis have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.114, Diagnostic Codes 7323 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See eg. 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2015). In the instant case, VA provided adequate notice in a letter sent to the Veteran in December 2008 letter. 

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records. Pertinent medical evidence associated with the claims file consists of private, service, and VA treatment records. Per the April 2015 Board remand, the RO also obtained outstanding VA treatment records

The record also contains the reports of January 2009 and December 2013 VA examinations. Per the April 2015 remand instructions, the Veteran also underwent a VA examination in September 2015. The January 2009, December 2013 and September 2015 VA examination reports reflect that the VA examiners reviewed the Veteran's past medical history, recorded his current complaints, conducted appropriate evaluations of the Veteran, and rendered appropriate diagnoses and opinions consistent with the remainder of the evidence of record. As such, the Board finds that the January 2009, December 2013 and September 2015 VA examination reports are sufficient upon which to base a decision with regard to this claim. See 38 C.F.R. § 4.2 (2015); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

In light of the above, the Board also finds that the RO substantially complied with the April 2015 remand directives, to the extent possible, and no further action in this regard is warranted. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with).

Also of record and considered in connection with the appeal are the various written statements provided by the Veteran. Accordingly, the Board finds that no additional RO action to further develop the record on the claim is warranted.

Laws and Regulations

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2015). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during active service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2015). 

Generally, the degree of disabilities specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015). Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned to the disability picture that more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015). Any reasonable doubt regarding the degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2015).

The Veteran's entire history is reviewed when making a disability determination. See 38 C.F.R. § 4.1 (2015). In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999). 

The evaluation of the same disability under various diagnoses, known as pyramiding, is generally to be avoided. 38 C.F.R. § 4.14 (2015). The critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the disabilities is duplicative or overlapping with the symptomatology of the other disability. See Esteban v. Brown, 6 Vet. App. 259, 261- 62 (1994).

The Board will consider not only the criteria of the currently assigned diagnostic codes, but also the criteria of other potentially applicable diagnostic codes.

In this case, the RO granted service connection for ulcerative colitis and assigned an initial 10 disability evaluation, effective September 9, 2008 under Diagnostic Code 7323. As noted above, in October 2015, the RO increased the evaluation assigned to the Veteran's service-connected ulcerative colitis to 60 percent, effective September 26, 2015.

Under Diagnostic Code 7323, a 10 percent disability rating is assigned for moderate ulcerative colitis with infrequent exacerbations. A 30 percent rating is warranted for moderately severe impairment, with frequent exacerbations. A 60 percent disability rating is appropriate for severe impairment, with numerous attacks yearly and with malnutrition, with health only fair during remissions. A 100 percent disability rating is warranted for pronounced impairment, resulting in marked malnutrition, anemia, and general debility, or with serious complications such as liver abscess. 

Under 38 C.F.R. § 4.114, ratings provided under Diagnostic Code s 7301 through 7329, 7331, 7342, and 7345 through 7348 are not to be combined with each other. Rather, a single rating is to be assigned under the Diagnostic Code which reflects the predominant disability picture, with elevation to the next higher rating where the severity of the overall disability warrants such elevation. 38 C.F.R. § 4.114.

Factual Background and Analysis

An October 2006 service treatment record noted that the Veteran had been complaining of diarrhea 6 to 7 times a day for the past 3 weeks as well as occasional abdominal cramping. 

In June 2007 his gastrointestinal symptoms were reevaluated and he underwent a colonoscopy which revealed mild chronic crypt destructive colitis with no dysplasia.

A February 2008 service treatment record noted current symptoms of increasing mid to lower abdominal pain, 10 pounds weight lost in one month, hematochezia, watery stools and about 8 bowel movements a day.

A July 2008 colonoscopy noted that the Veteran had a diagnosis of acute colitis and ulcerative colitis. After the colonoscopy, the diagnosis was ulcerative colitis. 

In January 2009, the Veteran received treatment at the emergency department for a flare-up of his ulcerative colitis. He reported that he was experiencing bloody diarrhea and lower abdominal pain which was typical of his flare-ups. He indicated that he just usually took his ulcerative colitis medicine which included a Prednisone taper and his symptoms usually abated.

VA provided an examination in January 2009. The Veteran reported that he developed intermittent abdominal cramps with bloody diarrhea some time in June 2006 while in the service. He reported having bloody stools 8 to 10 times a day and twice at night. He denied having fever or chills. He stated that he was treated with Asacol and Prednisone but the treatment did not help his gastrointestinal symptoms. He continued to have bloody stools but to a lesser degree. The rectal biopsy demonstrated active chronic crypt destructive proctitis with no dysplasia. His newly prescribed treatment helped his gastrointestinal symptoms. He reported that bloody diarrhea and abdominal cramps recurred in the past week. He had recurrence of the bloody diarrhea 6 to 7 times a day and nocturnal diarrhea twice per night with intermittent abdominal cramps that had been worse in the last few days. The Veteran denied symptoms of nausea or vomiting. He denied fevers or chills or changes in appetite. He denied dysplasia to solids and liquids as well as hematemesis or melena stools. On examination he was in no acute distress, his general health was normal and there was no evidence of anemia or pallor. He was not malnourished. His weight had remained unchanged over the past 12 months. His abdominal examination was benign and his bowel signs were normal. The Veteran had been previously employed as a cook. The Veteran reported that he was able to perform his occupation as a cook but with limitations due to his gastrointestinal symptoms. He stated that he had to make frequent visits to the bathroom for abdominal cramps and diarrhea that might occur while he was at work. His activities of daily living were not affected by his gastrointestinal symptoms. The diagnosis was mild ulcerative colitis which was mildly symptomatic at the time of examination. The Veteran also had a normal esophagus and hiatal hernia examination. 

In October 2009, the Veteran again received treatment at the emergency department for a flare-up of his ulcerative colitis. The Veteran reported that he had experienced flare-ups like this twice a year. He had intermittent abdominal cramping with some nausea but no vomiting yet and no fever or chills. He had some loose stools with occasional bits of blood mixed with mucus. He was in no acute distress. The diagnosis was an acute flare-up of ulcerative colitis. On discharge he was stable and improved. 

VA next provided an examination in December 2013. The Veteran continued to have symptoms of abdominal cramping, bloating and bloody, loose stool. He was on continuous medication for these symptoms as he was on Asacol. He had daily diarrhea and daily abdominal distension. He had episodes of bowel disturbance with abdominal distress as he had more or less constant abdominal distress. He did not have any weight loss attributable to an intestinal condition. There was no malnutrition. His intestinal condition did not impact his ability to work. 

In March 2014 the Veteran presented to the emergency room with complaints of abdominal pain as he thought he might be having a flare up of ulcerative colitis. He had a hyperactive bowel but was in no apparent distress. On discharge he was stable and improved. 

A June 2014 VA treatment report noted that the Veteran responded well to a recent flare up of his ulcerative colitis as a result of his Prednisone medication. He was now having two bowel movements a day with no blood. He was "feeling well".

An April 2015 colonoscopy revealed right and left sided ulcerative colitis. The diagnosis was chronic inflammation. A high fiber diet was advised and he was to discontinue non-steroidal anti-inflammatory medications (NSAIDs) in 2 weeks. 

In compliance with the April 2015 Board remand instructions, VA again examined the Veteran in September 2015. The examiner noted that the Veteran had required ongoing care and daily treatment for his ulcerative colitis. He had also had acute care for exacerbations despite the chronic treatment. He endorsed bouts of painful, bloody diarrhea and abdominal cramping. These episodes occurred every few months and lasted up to a couple of months. He had required acute and chronic treatment with antibiotics and steroids. He required continuous medication for control of his intestinal condition as he was on Mesalamine 4 times a day. He had frequent, bloody diarrhea and distension as he had bloating and cramping. He had frequent episodes of bowel disturbances and abdominal distress. In the past 12 months, he had 2 episodes of exacerbations and/or attacks of the intestinal condition. He did not have any weight loss attributable to an intestinal condition and there was no malnutrition, serious complications or other general health effects attributable to the intestinal condition. The Veteran's ulcerative colitis did not impact his ability to work. The examiner opined that the Veteran's ulcerative colitis was consistent with a daily moderate case requiring daily treatment and "episodes of severe requiring antibiotics and prolonged courses of steroids".

 Period prior to September 26, 2015

The Board finds that for the period from September 9, 2008 to September 26, 2015, the Veteran's ulcerative colitis was moderately severe with frequent exacerbations as required for an initial 30 percent rating under Diagnostic Code 7323.

As noted above, the Veteran experienced bloody diarrhea 6 to 7 times a day and abdominal cramps during periods of flare-ups. During this time period he was on continuous medication. He also had daily diarrhea and daily abdominal distension as he had more or less constant abdominal distress. 

As a result, when affording the Veteran the benefit of the doubt, the evidence shows that for the period prior to September 26, 2015, the Veteran suffered moderately severe ulcerative colitis with frequent exacerbations which warrants an initial 30 percent evaluation under Diagnostic Code 7323. 

However, for the period from September 9, 2008 to September 26, 2015, the evidence clearly does not show that the Veteran's ulcerative colitis was indicative of severe symptoms with numerous attacks per year and malnutrition, with only fair health during remissions, as required for a 60 percent rating under Diagnostic Code 7323. There is no evidence that the Veteran had malnutrition or was only in fair health during the period from September 9, 2008 to September 26, 2015. The January 2009 examiner stated that the Veteran's overall general health was normal. Additionally, both the January 2009 and December 2013 VA examiners noted that the Veteran's intestinal condition did not impact the Veteran's ability to work. While the Veteran reported experiencing bloody diarrhea and lower abdominal pain which was typical of his flare-ups, he also indicated that his symptoms usually abated when he took his ulcerative colitis medicine. 

Additionally, while a February 2008 service treatment record noted current symptoms of increasing mid to lower abdominal pain, 10 pounds weight lost in one month, hematochezia, watery stools and about 8 bowel movements a day, both the January 2009 and December 2013 VA examiners noted that the Veteran did not have any weight loss or malnutrition attributable to an intestinal condition.

Thus, the Board finds that a higher rating of 30 percent, and no higher, is warranted for ulcerative colitis for the period from September 9, 2008 to September 26, 2015. The Board has considered the benefit-of-the-doubt rule in making the current decision, but the preponderance of the evidence is against a 60 percent rating for ulcerative colitis for this period. 38 U.S.CA. § 5107(b) (2015); 38 C.F.R. §§ 3.102, 4.3 (2015); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Period since September 26, 2015

The Board finds that the preponderance of the evidence is against an initial disability rating in excess of 60 percent for ulcerative colitis for the period since September 26, 2015. Notably, the September 2015 VA examiner indicated that the Veteran's ulcerative colitis was consistent with only a daily moderate case requiring daily treatment. Significantly, while the September 2015 VA examiner noted "episodes of severe requiring antibiotics and prolonged courses of steroids", the evidence of record does not show that the Veteran's ulcerative colitis resulted in marked malnutrition, anemia, and general debility, or with serious complications, such as liver abscess, during the prescribed period. 

The Board notes that on September 2015 VA examination, the Veteran endorsed bouts of painful, bloody diarrhea and abdominal cramping which occurred every few months and lasted up to a couple of months. He also had frequent, bloody diarrhea and distension as he had bloating and cramping and had frequent episodes of bowel disturbances and abdominal distress. However, the examiner specifically noted that the Veteran did not have any weight loss, malnutrition, serious complications or other general health effects attributable to his intestinal condition. The Veteran's ulcerative colitis also did not impact his ability to work. As a result, the clinical evidence has not demonstrated any malnutrition, anemia or serious complications. 

The preponderance of evidence thus shows that his ulcerative colitis does not approximate the criteria for a 100 percent rating. Therefore the appeal must be denied for this period of time. There is no reasonable doubt to be resolved. 

Extraschedular Evaluation

Also considered by the Board is whether referral is warranted for a rating outside of the schedule. To accord justice in an exceptional case where the scheduler standards are found to be inadequate, the field station is authorized to refer the case to the Chief Benefits Director or the Director, Compensation and Pension Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. 38 C.F.R. § 3.321(b)(1) (2015).

The criterion for such an award is a finding that the case presents an exceptional or unusual disability picture with related factors as marked interference with employment or frequent periods of hospitalization as to render impractical application of regular schedular standards. 38 C.F.R. § 3.321(b). The Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b)(1) in the first instance; however, the Board is not precluded from raising this question, and in fact is obligated to liberally read all documents and oral testimony of record and identify all potential theories of entitlement to a benefit under the law and regulations. Floyd v. Brown, 9 Vet. App. 88 (1996). 

Extraschedular consideration involves a three step analysis. Thun v. Peake, 22 Vet. App. 111 (2008). First, the Board or the RO must determine whether the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology. Id. at 115. If the schedular rating criteria do reasonably describe the Veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. Id.

If the RO or the Board finds that the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology, then either the RO or the Board must determine whether the Veteran's exceptional disability picture includes other related factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. If this is the case, then the RO or the Board must refer the matter to the Under Secretary for Benefits or the Director of the Compensation and Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id.

The evidence shows that the Veteran's service-connected ulcerative colitis results in symptoms including daily diarrhea, bloody stools; daily abdominal distension, constant abdominal distress as well as frequent exacerbations. Additionally, the Veteran received emergency room treatment for acute exacerbations of his service-connected ulcerative colitis. However, there is no evidence of record of an exceptional or unusual clinical picture not already contemplated by the rating criteria under 38 C.F.R. § 4.124a, Diagnostic Code 7323. As noted above, the symptoms are accounted for in the initial 30 percent and 60 percent ratings. It is recognized that service connection has also been established for hemorrhoids, which have been separately evaluated. The record does not show that there has been a collective effect of his service connected disabilities that makes the regular schedular criteria inadequate in this case. Accordingly, as the evidence does not demonstrate that the Veteran's ulcerative colitis disability is productive of an exceptional disability picture that is not contemplated by the schedular rating 

(CONTINUED ON NEXT PAGE)

criteria, the Board therefore has determined that referral of the case for extraschedular consideration pursuant to 38 C.F.R. § 3.321(b) (1) is not warranted.

ORDER

Entitlement to an initial rating of 30 percent for ulcerative colitis for the period prior to September 26, 2015 is granted, subject to the laws and regulations governing the payment of monetary benefits.

Entitlement to an initial rating in excess of 60 percent for ulcerative colitis for the period since September 26, 2015 is denied.

____________________________________________
JAMES G. REINHART
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs